# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NANCY BERG,<br><br>    *Plaintiff,*<br><br> v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    *Defendant.* | CIVIL ACTION<br>NO. 17-04452 |

**PAPPERT, J.**                               July 26, 2019

## MEMORANDUM

  Nancy Berg seeks judicial review of the Commissioner of Social Security's denial of her application for Supplemental Security Income under Title XVI of the Social Security Act. The Court referred the case to Magistrate Judge Elizabeth T. Hey for a Report and Recommendation. (ECF No. 18.) Upon careful consideration of Berg's Statement of Issues in Support of Request for Review (ECF No. 14), the Commissioner's Response (ECF No. 17), Berg's Reply (ECF No. 19), Judge Hey's R. & R. (ECF No. 20), Berg's Objections (ECF No. 21), the Commissioner's Response (ECF No. 23) and the Administrative Record (ECF No. 11),[1] the Court overrules Berg's objections and adopts the R. & R. denying her request for review and affirming the Commissioner's decision.

---

1   The record, consisting of 619 numbered pages, was uploaded to ECF. *See* (ECF Nos. 11-1–11). The Court will cite to the record page numbers rather than ECF document numbers.

1

# I

## A

Berg applied for Supplemental Security Income on May 18, 2010, alleging disability beginning on April 19, 2010. (Administrative Record ("R.") 310–316.) She was forty-nine years old when she filed her application. (*Id.* at 310.) Berg did not finish high school or obtain her GED, but completed the tenth grade. (*Id.* at 57, 339.) Berg worked in general labor at various temporary agencies from approximately 1998 to 2001, but never worked anywhere on a full-time basis for more than three months. (*Id.* at 58, 339.) She now lives with her 18 year old son, Michael Brown. (*Id.* at 56.)

Berg initially sought SSI for impairments that limit her ability to work, including angina, high blood pressure, hepatitis C, diabetes, a bad liver and asthma. (*Id.* at 338.) Berg's application was initially denied by the Social Security Administration on October 28, 2010. (*Id.* at 165–169.) She requested a hearing before an Administrative Law Judge, which was held on May 10, 2012. (*Id.* at 40, 95.) Berg, represented by counsel, testified at the hearing, as did her oldest son and an impartial vocational expert. (*Id.* at 92–143.) She testified to additional impairments including pain in her hips, legs, knees, elbows and hands, obesity, vision problems, and mental health conditions including depression and anxiety. (*Id.* at 98, 101, 104, 106, 108, 112, 116, 118.)

On July 23, 2012, the ALJ issued an unfavorable decision. (*Id.* at 145–56.) Berg requested review, and on November 20, 2013, the Appeals Council remanded her application to an ALJ for an additional hearing. (*Id.* at 160–163.) The Appeals Council instructed the ALJ to further develop evidence regarding Berg's mental impairment

and obtain the services of a medical expert for an evaluation. (*Id.* at 162–63.) The Appeals Council also instructed the ALJ to perform an evaluation as to what effects, if any, the claimant's diabetes and obesity had on her ability to perform basic work activities. (*Id.* at 161–162.)

On July 15, 2015, a different ALJ held a hearing in which Berg, represented by counsel, her son, and an impartial vocational expert again testified. (*Id.* at 48–89). On December 3, 2015, the ALJ issued a decision that was in part favorable to Berg. (*Id.* at 29–47.) At step one, the ALJ determined that Berg had not engaged in substantial gainful activity since April 19, 2010.[2] (*Id.* at 35.) At step two, the ALJ found that she has several severe physical and mental impairments, including: trochanteric bursitis, mild, multi-level degenerative disc disease, morbid obesity, recurrent major depressive disorder with psychotic features, generalized anxiety disorder, and social anxiety disorder. (*Id.* at 35–36.) The ALJ noted that while medical records indicate Berg suffered from other impairments, including type 2 diabetes, elevated liver levels, hypertension and asthma, these impairments would have no more than a minimal

---

[2] The Commissioner has established a five-step process to determine whether claimants are disabled. 20 C.F.R. § 416.920(a). At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004) (citation omitted); 20 C.F.R. § 416.920(b). If not, the ALJ proceeds to step two where he or she must determine whether the claimant has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." *Ramirez*, 372 F.3d at 550 (citation omitted); 20 C.F.R. § 416.920(c). If the claimant successfully demonstrates a "severe impairment," the ALJ proceeds to step three to assess whether the impairment meets or medically equals one of the listed impairments; if so, the claimant qualifies for disability. *Ramirez*, 372 F.3d at 550–51 (citation omitted); 20 C.F.R. §416.920(d). If, however, the impairment does not meet or medically equal a listed impairment, the inquiry proceeds to step four where the ALJ determines whether the claimant has the "residual functional capacity" (RFC) to perform any prior relevant work. *Ramirez*, 372 F.3d at 551; 20 C.F.R. §416.920(e). If the claimant can perform any prior relevant work, he or she will not be found disabled. *Ramirez*, 372 F.3d at 551. If not, the fifth step requires the ALJ to consider "vocational factors" (age, education and past work experience) to determine whether the claimant is capable of performing other jobs existing in the national economy. *Id.* (citing 20 C.F.R. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c)).

impact on her ability to perform basic work activities and therefore were non-severe.
(*Id*. at 36.) At step three, the ALJ determined that her impairments, either alone or in combination, did not meet the severity of one of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (*Id*. at 26–27.)

At step four, the ALJ found that since April 19, 2010, Berg had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in CFR 416.967(b) except she is limited to occasional walking and standing, 6 hours in an 8-hour day. The claimant is limited to occasional postural maneuvers such as balancing, stooping, kneeling, crouching crawling and climbing ramps/stairs; with no climbing of ladders/ropes/scaffolds. The claimant must be afforded an option to sit and stand during the workday, 1-2 minutes every 20 minutes or so. Further, the claimant is limited to simple, routine tasks, not performed in a fast-paced production environment, involving only simple work-related decisions and in general, relatively few workplace changes. The claimant must work primarily with objects rather than people, and no jobs requiring teamwork or interaction with the public. The claimant is limited to occupations which require no mathematical calculations such as cashier or teller work; and generally limited to 1-2 step tasks learned by demonstration.

(*Id*. at 37.) After considering Berg's age, education, work experience, residual functional capacity and the vocational expert's testimony, the ALJ determined that prior to April 17, 2015 jobs existed in significant numbers in the U.S. economy that Berg could perform. (*Id*. at 40.) However, the ALJ found that beginning on April 17, 2015—the date the ALJ found her age category changed to an individual of advanced age because Berg was 54.5 years old—there were no jobs that existed in significant numbers in the national economy that Berg could perform. (*Id*. at 40–42) (citing 20 C.F.R. § 416.963).

Berg appealed the ALJ's decision. The Appeals Council granted her request for review and on July 28, 2017 issued a ruling on the merits that was less favorable to

Berg.  (*Id*. at 1–11.)  The Appeals Council adopted the ALJ's finding at steps one, two, three and four of the sequential evaluation process, including an identical RFC assessment.  (*Id*. at 4, 6, 8.)  The Appeals Council did not, however, agree with the ALJ's findings regarding the date that Berg's age category changed to an individual of advanced age.  The Appeals Council determined that Berg's age category changed on October 16, 2015, the day before her 55th birthday.  (*Id*. at 8–9.)  The Appeals Council found accordingly that Berg became disabled on October 16, 2015, not before.

Berg filed her Complaint in this Court on October 3, 2017, seeking judicial review of the Appeals Council's decision.  (Compl., ECF No. 3.)  She argued that (1) the Appeals Council erred when it modified the ALJ's determination as to when she entered an older age category and (2) the Appeals Council's decision was not supported by substantial evidence because its RFC determination did not incorporate Berg's moderate difficulties with concentration, persistence, and pace.  On June 18, 2018, the Court referred the case to Magistrate Judge Hey for a report and recommendation.  On April 30, 2019, Judge Hey recommended that Berg's request for review be denied.  (R. &. R. at 1.)  Berg raises two objections to the R. & R., which the Court overrules for the reasons that follow.

II

Upon designation, a magistrate judge may conduct hearings and submit proposed findings of fact and recommendations to a judge of the court for disposition. 28 U.S.C. § 636(b)(1)(B); *Dries v. Berryhill*, 2017 WL 4922011 at *2 (M.D. Pa. Oct. 31, 2017).  The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  When no

5

objections are made to the R. & R., "the court should, as a matter of good practice, 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Latorre v. Wetzel*, 2016 WL 3014874 at *1 (E.D. Pa. May 26, 2016) (quoting Fed. R. Civ. P. 72(b) advisory committee's note). For the portions of the R. & R. to which neither party objected, no clear error appears on the face of the record and the Court accordingly accepts Judge Hey's report.

The Court reviews *de novo* those portions of the R. & R. to which Berg objects. *See* 28 U.S.C. § 636(b)(1); *see also Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011). The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). The Court reviews the Commissioner's factual findings for "substantial evidence," 42 U.S.C. § 405(g), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks omitted)). "It is 'more than a mere scintilla but may be somewhat less than a preponderance of the evidence.'" *Id.* (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). In reviewing the Appeals Council's decision, the Court is not permitted to weigh the evidence or substitute its own conclusions for those reached by the Appeals Council. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).

Here, because the Appeals Council granted Berg's request for review and rendered a decision on the merits, the Appeals Council is the final administrative decisionmaker and its ruling is subject to judicial review. *See* 20 C.F.R. §§ 416.1455, .1479, .1481; *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) (explaining that when

6

the Appeals Council "has accepted the case for review and made a decision on the merits, based on all the evidence before it, [the Appeals Council's decision] then becomes the decision reviewed in the courts") (quotations omitted).

III

A

Berg first objects to Judge Hey's finding that the Appeals Council correctly applied the age category rules in determining that she became disabled one day before her 55th birthday. She claims that the Appeals Council committed an error of law and that she instead was entitled to benefits six months earlier based on a "borderline age situation."

When the disability analysis reaches Step Five, an ALJ must consider a claimant's RFC along with vocational factors, such as age, in determining whether she is able to do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Medical-Vocational Guidelines ("Grids") are used to evaluate a claimant's ability to work by matching the claimant's age, education, and work experience with her work capability. See 20 C.F.R. § 417.969. The Grids provide that certain workers with significant impairments and limited transferable job skills are deemed disabled when they reach a specific age. In applying the Grids, a claimant's age is divided into three categories: younger person (18–49), person closely approaching advanced age (50–54) and person of advanced age (55 and over). 20 C.F.R. § 416.963.

"On occasion, however, disability claimants may meet the impairment and limited job transferability benchmarks prescribed by the Medical Vocational Guidelines, but fall a few days, weeks, or months short of the age thresholds set by

7

these grids." *Antal v. Berryhill*, No. 3:17-CV-2097, 2018 WL 4038147, at *3 (M.D. Pa. July 26, 2018), *report and recommendation adopted*, No. CV 3:17-2097, 2018 WL 4030694 (M.D. Pa. Aug. 23, 2018). "While a strict application of the grids to these borderline cases would result in a claim denial, for these borderline situations the Commissioner has adopted a borderline rule, allowing [ALJs] to treat someone who otherwise satisfied the grid impairment and job skill requirements but whose age is on the borderline of the age threshold defined by the grids to have a disability claim considered under the grids." *Id.* (citing 20 C.F.R. §§ 404.1563(b)). Specifically, the borderline age rule provides that:

> We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.

20 C.F.R. §§ 404.1563(b), 416.963(b).

The SSA has issued interpretive guidance which clarifies when the borderline age rule applies.[3] The SSA Commissioner's Office of Hearings and Appeals guidance (HALLEX), explains that:

---

3     The United States Supreme Court in *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) explained that:

> We must give substantial deference to an agency's interpretation of its own regulations. *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 150–151 (1991); *Lyng v. Payne*, 476 U.S. 926, 939 (1986); *Udall v. Tallman*, 380 U.S. 1, 16 (1965). Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given "'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" *Ibid.* (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)). In other words, we must defer to the Secretary's interpretation unless an "alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Gardebring v. Jenkins*, 485 U.S. 415, 430 (1988).

8

**B. Identifying a Borderline Age Situation**

> If application of a claimant's chronological age results in a decision that the claimant is not disabled, an ALJ will identify whether the claim may involve a borderline age situation by applying a two-part test:
>
> • Is the claimant's age within a few days or a few months of the next higher age category?
>
> • Will the higher age category result in a decision of "disabled" instead of "not disabled"?
>
> If the answer to one or both parts of the test is "no," a borderline age situation either does not exist or would not affect the outcome of the decision. The ALJ will then use the claimant's chronological age.
>
> If the answer to both parts of the test is "yes," a borderline age situation exists, and the ALJ must decide whether it is more appropriate to use the claimant's chronological age or the higher age category.

BORDERLINE AGE, HALLEX I-2-2-42 2016 WL 1167001, at *1 (2016). To decide the first part of the test, an ALJ assesses whether the claimant reaches or will reach the next higher age category within a few days to a few months after, as is relevant here, the date of adjudication. *Id.* In addition to HALLEX, the Social Security Administration, Program Operations Manual System ("POMS") DI 25015.006, Borderline Age states that: "If using the claimant's chronological age results in a partially or fully favorable determination, only consider the claimant's chronological age. This is not a borderline age situation." SSA, Program Operations Manual (POMS) DI 25015.006, Borderline Age.[4]

Berg does not meet either prong of the two-part test required for a borderline age situation. Again, a borderline age situation arises only when a claimant "reaches or

---

4   "[T]he [POMS], [are] 'the publicly available operating instructions for processing Social Security claims.' 'While these administrative interpretations are not products of formal rulemaking, they nevertheless warrant respect.'" *Artz v. Barnhart*, 330 F.3d 170, 176 (3d Cir. 2003) (quoting *Wash. Dept. of Social Servs. v. Keffeler*, 537 U.S. 371, 385 (2003)).

9

will reach the next higher age category within a few days to a few months to entering an older age category at the time of the ALJ's adjudication," not after she has already entered the older age category. *See* BORDERLINE AGE, HALLEX I-2-2-42 2016 WL 1167001, at *1 (2016). Berg turned 55 years of age on October 17, 2015, and the ALJ adjudicated her claim approximately seven weeks later, on December 3, 2015. Because Berg had already entered the age category of "persons of advanced age" prior to the ALJ's adjudication, a borderline age situation did not arise in this case.

Moreover, because Berg's age at the time of adjudication resulted in her receiving benefits under the Grids, the borderline age rules do not apply to her case. "By its terms [the] administrative guidance suggests that the borderline age rules are applicable only when the claimant's chronological age does not permit that claimant to be considered for disability under the Medical Vocational Guidelines." *Antal*, 2018 WL 4038147, at *4. "Those few courts that have considered this precise issue have held that the borderline age analysis does not permit a claimant like [Berg], who has received benefits under the Medical Vocational Guidelines, to rely upon the borderline rule to secure 'a more favorable onset date and expand the number of months for which [s]he can receive retroactive benefits.'" *Id*. at *5 (citing *Wells v. Colvin*, No. 2:15-CV-64-SPM, 2016 WL 5390935, at *5 (E.D. Mo. Sept. 27, 2016)).

B

Berg asserts in her second objection that the ALJ failed to account for her moderate difficulty in concentration, persistence, or pace. An ALJ is required to "include restrictions specific to non-exertional limitations, including concentration, persistence, and pace" in the RFC, and the hypothetical presented to the vocational

10

expert. *McCall v. Colvin*, No. CV 13-4770, 2015 WL 9302929, at *9 (E.D. Pa. Dec. 22, 2015) (citing *Burns*, 312 F.3d at 123 and *Ramirez*, 372 F.3d at 554). "Case law in this circuit makes clear that a restriction limiting an individual, *e.g.*, to 'simple, routine tasks' or 'unskilled work,' is sufficient to accommodate moderate limitations in concentration, persistence and pace." *Shaffer v. Colvin*, No. Civ.A.13-925, 2014 WL 4925067, at *5 (W.D. Pa. Sept. 30, 2014) (citations omitted).

Judge Hey found that substantial evidence supported the Appeals Council's RFC, noting that the RFC was "comprehensive" and that the ALJ included all of the assessed limitations in the hypothetical to the VE, including simple, routine tasks not performed in a fast-paced environment. (R. & R. at 29 (citing R. at 79–80)). In her objections to the R. & R., Berg makes a new argument regarding the adequacy of the Appeals Council's RFC, contending that the restrictions did not fully address her impairments because neither the Appeals Council nor the ALJ explained the term "fast paced production." (Obj. at 9.) She claims that "[g]iven that 'no fast paced production environments' is nowhere defined, and is ambiguous and irrelevant, the vocational hypothetical was error." (*Id*. at 12.)

Because Berg raised this argument for the first time in her objections to the R. & R., she waived it. *See, e.g.*, *Jimenez v. Barnhart*, 46 Fed.Appx. 684, 685 (3d Cir. 2002) ("[B]ecause [claimant] raised the argument that she is entitled to a closed period of disability for the first time in her objections to the Magistrate Judge's Report and Recommendations, and not in her opening brief, we deem this argument waived."); *see Lucas v. Barnhart*, 184 Fed.Appx. 204, 206 n.1 (3d Cir. 2006) (finding arguments not raised in an appellant's opening brief are deemed waived).

Even if Berg had raised this issue in her initial brief, her claim would fail. While not explicitly defining fast-paced environment, the Appeals Council's RFC limited Berg to: relatively few workplace changes; work[ing] primarily with objects rather than people; occupations which required no mathematical calculations such as cashier or teller work; limited to 1-2 step tasks learned by demonstration; and precluded her from jobs requiring teamwork or interaction with the public. All of these terms help explain the "no fast-paced environment" restriction and allow a reviewing court to evaluate whether that restriction adequately accounted for Plaintiff's moderate issues with concentration, persistence, or pace. *See, e.g., Pettway v. Colvin*, No. CV 14-6334, 2016 WL 5939159, at *9 (E.D. Pa. Apr. 8, 2016) (by restricting the plaintiff to work "free from fast paced production," to only "simple work related decisions," and to "few, if any, work place changes," the RFC "adequately accounted for [p]laintiff's moderate limitations in concentration, persistence, or pace"), *report and recommendation adopted*, 2016 WL 5930916 (E.D. Pa. Oct. 12, 2016).

An appropriate Order follows.

BY THE COURT:

 */s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.